FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

00 MAR 28 AM 9:55

U.S. DISTRICT COURT
N.D. OF ALABAMA

BEN A. CHISOLM,         )
    Plaintiff;          )
                        )
-vs.-                   )      No. CV-98-P-1502-W
                        )
SCOTT BRIDGE CO., INC., )
    Defendant.          )
                        )

ENTERED

MAR 28 2000

## OPINION

Defendant's Motion for Summary Judgment was taken under submission at the court's March 3, 2000 motion docket. For the following reasons, the motion is due to be granted.

### Facts[1]

Defendant Scott Bridge is a company that constructs and repairs bridges. Plaintiff is an African-American male who was hired by Defendant in November, 1996, as a cement finisher. He first worked for Defendant at a job on the Pearl River (between Poplarville, Mississippi, and Bogalusa, Louisiana), and then moved with Scott Bridge to a job in Bridgeport, Alabama. At that time, Plaintiff purchased a trailer from another employee, the cost of which was advanced to him by Defendant, which then withheld Plaintiff's payments from his paychecks. According to Plaintiff, Scott Bridge determined where his trailer would be placed, and the site selected made him feel that he was in "racial danger."

---

[1] The recitation of facts is presented in the light most favorable to the plaintiff.

1

10

At the Pearl River site, Cecil Smith (the superintendent) gave Plaintiff the opportunity to operate a crane. At that time Plaintiff replaced a white employee named Bryant who had previously operated the crane. See Pl.'s Dep. at 18. When he moved to Bridgeport, Plaintiff began operating the crane at that site, until his supervisor, Herschel Spillman, took him off the crane. Spillman placed Bryant back on the crane and put Plaintiff on a labor project, repairing a fence on an island. According to Defendant, Plaintiff was removed from the crane because he operated it in an unskilled, unsafe manner.

Plaintiff claims that his new assignment required him to him to work in about four feet of water in a snake-infested "Indian Burial Ground." Plaintiff testified at his deposition that he injured his back trying to avoid a snake. After one day on this assignment, Plaintiff asked Smith if he would be put back on the crane. When he was told that he would not be reassigned to the crane, Plaintiff left the job site and never returned. See Pl.'s Dep at 96-97.

In March 1998, Plaintiff filed this action pro se and brought claims of race and age discrimination under Title VII, § 1981 and the ADEA.[2] In January, 1999, counsel for Plaintiff filed a notice of appearance. Plaintiff voluntarily dismisses his age claims in his brief. His remaining claims are for racial discrimination in the terms and conditions of his employment and for constructive discharge.[3]

---

[2]In his complaint, Plaintiff also charges that Defendant "breached company policy." As Plaintiff has failed to address such a claim in his brief, the court considers it abandoned.

[3]Although Plaintiff addresses two separate claims in his brief, both arise from Plaintiff's allegations that he was illegally discriminated against when he was removed from the crane and assigned to work on the fence.

2

Analysis

Plaintiff has brought his claims for intentional discrimination under both Title VII and § 1981. The test for intentional discrimination is the same under both Title VII and § 1981. See Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 986 (1988); General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982). Therefore, a plaintiff whose Title VII claims fail to meet the standards for summary judgment necessarily cannot proceed under § 1981.

Plaintiff can prove intentional discrimination by presenting direct evidence of a decisionmaker's discriminatory intent, see Buckley v. Hospital Corp. of America, Inc., 758 F.2d 1525, 1529-30 (11th Cir. 1985), or by stating a case based on circumstantial evidence under the familiar burden-shifting formulation of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff has not presented direct evidence of a decisionmaker's discriminatory intent. Therefore, to state a claim race discrimination based on circumstantial evidence, he must present substantial evidence of the elements of a Title VII claim under McDonnell-Douglas.

Plaintiff must first state a prima facie case by showing that 1) he is a member of a protected group; 2) he was qualified for his position; 3) he was subjected to an adverse employment action; and 4) similarly-situated employees not in the protected group were treated more favorably. See McDonnell-Douglas, 411 U.S. at 802. The employer is then afforded the opportunity to articulate a legitimate, nondiscriminatory reason for the employment decision to rebut the presumption of discrimination raised by a plaintiff's prima facie case. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). Thereafter, the burden of proof shifts back to the plaintiff to show that the asserted reason was a pretext for discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

First, Plaintiff's alleges that he was discriminated against when he was reassigned from operating a crane to laboring on a fence. Plaintiff has satisfied his evidentiary burden to state a prima facie case because he testified that he was replaced with a white employee with equal or lesser qualifications, which he noted through personal observation. However, Defendant has stated a legitimate non-discriminatory reason for taking Plaintiff off the crane: that he was operating it in an unsafe manner. In support, Defendant offers affidavits from Plaintiff's supervisors, and Plaintiff's own testimony that other employees did not want him on the crane.[4]

As evidence of pretext, Plaintiff offers his testimony that: 1) he was never told by his supervisors that he was an unskilled operator; 2) he was replaced by a white employee who was an unsafe operator; and 3) he was taken off the crane by a white supervisor.[5]

In fact, Plaintiff testified that during the time he operated the crane, Smith had told him of the other workers' complaints. See Pl.'s Dep. at 80. Plaintiff also testified that in Pearl River he had replaced Bryant on the crane. This strongly suggests that Defendant's later decision to switch them back was not motivated by illegal discrimination.[6] Additionally, the fact that it was a white supervisor who made the decision to put Bryant back on the crane is not probative in the absence of other evidence of discrimination or racial animus.

---

[4]Plaintiff testified:
Q: What acts of employees are you referring to?
A: Well, the ones they hired. Like they would make motions like when I was on the crane they didn't want me on there..." Pl.'s Dep. at 108.

[5]Plaintiff points out that Bruce Rudolph, a black supervisor testified in his affidavit that he, not a white supervisor, decided to take Plaintiff off the crane. However, the disparity between Rudolph's and Plaintiff's recollections is not probative of pretext.

[6]Plaintiff testified, "off and on he would take me off the crane to let this young fellow operate the machine. And the fellow, I had took his position in... Poplarville because he didn't know how to operate it. He wasn't stable with the crane." Pl.'s Dep. at 18.

4

Second, Plaintiff alleges that the work environment at Scott Bridge was racially hostile and that as a result, he could not return to work. His constructive discharge claim arises out of his allegations that Defendant required him to work in an "Indian Burial Ground" which was infested with snakes. He also claims that the hostile environment arose from the placement of his trailer in an area that made him uncomfortable, and a statement by Rudolph, an African-American supervisor, who told him to "get your black ass off the barge."

To proceed on his constructive discharge claim, Plaintiff must present substantial evidence from which a reasonable jury could conclude that the working conditions were so intolerable that a reasonable person in his position would be compelled to resign. See Kilgore v. Thompson & Brock Management, 93 F.3d 752, 754 (11th Cir. 1996). As difficult as the conditions in the "Indian Burial Ground" appear to have been, Plaintiff has failed to present evidence that he was required to work under these conditions on account of his race.

Plaintiff testified that other employees, including white employees, were required to work in the snake infested area. See Pl.'s Dep. at 114-15.[7] This indicates that it is unlikely that Plaintiff's assignment to this area was due to racial discrimination. Although Plaintiff testified that he felt uncomfortable with his trailer placement, he offers no evidence of any particular person or situation that made him feel that way, nor does he offer evidence of asking Defendant to move it to a preferable spot. Additionally, the comment by Rudolph, who is also black, does not suggest a hostile environment so severe that Plaintiff had no choice but to resign. In their totality, these conditions are not so severe and pervasive that a reasonable jury could conclude that

---

[7]Plaintiff also testified that some men refused to work in that area again. Although no information is provided as to whether these men retained their jobs, such information would not be relevant as Plaintiff walked off of the job, and did not return to see if he would be reassigned.

5

Plaintiff was *compelled* to resign.

As the Eleventh Circuit stated, "[a] constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation." Kilgore, 93 F.3d at 754. Plaintiff left after only one day in the "Indian Burial Ground," when he was informed by his supervisor that he would not be put back on the crane. He did not attempt to complain to any one at Scott Bridge, including Smith, that he believed that he had been discriminated against. See Pl.'s Dep. at 98-99.

Accordingly, summary judgment is due to be granted as to all of Plaintiff's claims.

Dated: March 28, 2000

_____
Judge Sam C. Pointer, Jr.

Service List:
   M. Jack Hollingsworth
   Kevin W. Jent
   James P. Alexander
   Angus Nabers McFadden

6